## WILLIAM M. THOMAS v. LORENZO COREY.

*Sawing contract—Breach.*

In this case plaintiff failed to prove his readiness or that he offered to commence sawing the timber which he had contracted with defendant to get out and saw, before bringing suit for a breach of such agreement; and it is held that the court should have granted defendant's request to take the case from the jury. An examination of the opinion is essential to a full understanding of the case.

Error to Montcalm. (Smith, J.) Argued February 8, 1889. Decided February 15, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*N. J. Brown* and *Fletcher & Wanty,* for appellant.

*N. O. Griswold* and *Taggart, Wolcott & Ganson,* for plaintiff, contended:

1. The sale of the timber to Frost was a breach of the contract between Corey and the plaintiff, because it put it out of the power of the defendant to perform the contract upon his part; citing *Unit d States v. Behan,* 110 U. S. 338; *Lovell v. Ins. Co.,*

111 Id. 264; *Newcomb v. Brackett*, 16 Mass. 161; *Bolles v. Sachs*, 37 Minn. 315; *Gray v. Green*, 9 Hun, 334; *Jennings v. Lyons*, 39 Wis. 553; *Cutter v. Powell*, 2 Smith, Lead. Cas. 30; 42, 43.

CAMPBELL, J. The plaintiff, who owned a saw-mill purchased from defendant, sued defendant for breach of an agreement whereby plaintiff was to have the getting out and sawing of all the available timber on a certain parcel of land described in the contract; the good and straight logs to be sawed into lumber as directed, and the crooked and partially defective into shingles. This contract was made in April, 1885, and no time of performance was fixed. At that time, plaintiff had a job for one Babcock. In August, he told defendant he would be ready for his work in a week or two. Defendant, desiring to keep his timber about two years longer, asked if plaintiff could not get other timber to saw; and plaintiff on September 10, 1885, made an agreement with Mr. Wonderly, whose land joined defendant's, to saw all the pine on his land at rates somewhat lower than those agreed on with defendant. There was on the trial testimony conflicting somewhat as to how far the procurement and cutting and preparation for delivery of defendant's pine in lumber and shingles exceeded in cost that of the Wonderly contract. This suit was tried in June, 1888, and the Wonderly job was not completed when suit brought, and apparently not then, and required considerable further time.

In September, 1885, after it was agreed plaintiff should take the Wonderly contract, defendant made a contract for the sale of his land to Shepard Frost. One of the conditions of this contract was that the timber should be subject to the contract with plaintiff. In August, 1887, Frost told plaintiff that he did not think himself under any obligations to plaintiff, and should proceed to saw his own logs. In the fall of 1887, plaint-

iff, who is contradicted in some important matters by Corey, states that he told Corey it appeared that he was not to have the cutting of the Frost lumber, and asked if Corey could not get it back, or in some way procure the cutting for him, but he said he could not get it back. In October, 1887, he says he told Corey he was entitled to damages against him, but Corey denied the liability. The plaintiff closed his case without any proof that he was ready or offered to begin sawing the Frost timber at or before suit, or at all. Frost testified that in the summer of 1886 he asked plaintiff if he was ready to perform the Corey contract, and he said he was not, but might in the fall. Frost was not allowed by the court below to testify concerning what talk occurred between him and Wonderly in an effort to get Wonderly to release his contract. Nevertheless plaintiff was allowed to give his version of what Frost told him concerning this conversation, and of plaintiff's reply, referring to a conversation of his own with Wonderly, which should not have been permitted. Plaintiff did not swear that Wonderly had made any arrangement allowing him to saw for Frost, nor state what such arrangement was; and the only reference he made to anything bearing on it was on the rebuttal, and not in making out his cause of action.

The declaration contains several counts besides the common counts. The two first counts were demurred to as showing no cause of action, but the demurrer was overruled. The first count avers, as a breach, the conveyance of the timber to other parties not named, and a refusal to permit the sawing, although the time had elapsed, and plaintiff had been ready to do it. This count, although not accurate in averments, is not demurrable in substance, but it was not proved. There was no proof of readiness, and a refusal after readiness to allow

the sawing; on the contrary, plaintiff was not ready even when suit was brought. The second count is hardly distinguishable from the first, except for brevity. The third is substantially equivalent in all important features. The fourth count avers a breach immediately after the date of the contract by the conveyance of the timber and refusal to let plaintiff saw, and sets up the Wonderly contract as the best thing he could do to obtain employment, and relies on the difference between his prices and defendant's as the measure of damages for that reason. His own testimony shows that the Wonderly contract was not forced upon him by any breach of contract, but was really the obstacle at last to his doing the work under defendant's contract. And the court below, adopting the theory of the third count, but fixing the breach in August, 1887, gave plaintiff the difference between those contract prices for the whole timber. This was not the breach alleged.

Plaintiff did nothing to authorize a recovery under the common counts, and proved nothing under the counts he relied on. It would not be worth while to consider several nice questions which would have arisen had he proved anything substantially as he alleged it. If other averments had been made and proved, the issues would have called for different treatment. There is no question but that there were some errors concerning testimony let in and excluded on one side, and not treated in the same way on the other; and the important questions concerning the measure of damages would have required very serious attention. But we think that defendant was entitled to the request made to take the case from the jury, for the reasons we have given. We are obliged to grant a new trial, and plaintiff may have leave to amend his declaration, or, if he chooses, to submit to a nonsuit, and sue over again, if he thinks he has a case.

The judgment must be reversed, with costs of both courts, and a new trial granted.

The other Justices concurred.